(Slip Opinion) OCTOBER TERM, 2013 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## WHITE, WARDEN *v.* WOODALL

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 12–794.   Argued December 11, 2013—Decided April 23, 2014

Respondent pleaded guilty to capital murder, capital kidnaping, and first-degree rape, the statutory aggravating circumstance for the murder.  He was sentenced to death after the trial court denied defense counsel's request to instruct the jury not to draw any adverse inference from respondent's decision not to testify at the penalty phase.  The Kentucky Supreme Court affirmed, finding that the Fifth Amendment's requirement of a no-adverse-inference instruction to protect a nontestifying defendant at the guilt phase, see *Carter* v. *Kentucky*, 450 U. S. 288, is not required at the penalty phase.  Subsequently, the Federal District Court granted respondent habeas relief, holding that the trial court's refusal to give the requested instruction violated respondent's privilege against self-incrimination.  The Sixth Circuit affirmed.

*Held*: Because the Kentucky Supreme Court's rejection of respondent's Fifth Amendment claim was not objectively unreasonable, the Sixth Circuit erred in granting the writ.  Pp. 3–12.

   (a) The difficult-to-meet standard of 28 U. S. C. §2254(d) permits a court to grant federal habeas relief on a claim already "adjudicated on the merits in State court" only if that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by [this] Court."  "'[C]learly established Federal law'" includes only " 'the holdings" of the Court's decisions,'" *Howes* v. *Fields*, 565 U. S. ___, ___; and an "unreasonable application of" those holdings must be " 'objectively unreasonable,' " *Lockyer* v. *Andrade*, 538 U. S. 63, 75–76.  The state-court ruling must rest on "an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington* v. *Richter*, 562 U. S. ___, ___.

Here, the Kentucky Supreme Court's conclusion was not "contrary to" the Court's holdings in *Carter, supra,* which required a no-adverse-inference instruction at the *guilt* phase; in *Estelle* v. *Smith*, 451 U. S. 454, which concerned the introduction at the penalty phase of the results of an involuntary, un-Mirandized pretrial psychiatric examination; or in *Mitchell* v. *United States*, 526 U. S. 314, 327–330, which disapproved a trial judge's drawing of an adverse inference from the defendant's silence at sentencing "with regard to factual determinations respecting the circumstances and details of the crime." Nor was the Kentucky Supreme Court's conclusion an unreasonable application of the holdings in those cases. This Court need not decide whether a no-adverse-inference instruction is required in these circumstances, for the issue before the Kentucky Supreme Court was, at a minimum, not "beyond any possibility for fairminded disagreement," *Harrington, supra,* at ___. *Mitchell* in particular leaves open the possibility that some inferences might permissibly be drawn from a defendant's penalty-phase silence. Thus, it cannot be read to require the type of blanket no-adverse-inference instruction requested and denied here. Moreover, because respondent's own admissions of guilt had established every relevant fact on which Kentucky bore the burden of proof, *Mitchell*'s narrow holding, which implied that it was limited to inferences pertaining to the facts of the crime, does not apply. Pp. 3–9.

(b) Respondent contends that the state court was unreasonable in refusing to extend a governing legal principle to a context in which it should have controlled, but this Court has never adopted such a rule. Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error. The appropriate time to consider, as a matter of first impression, whether *Carter*, *Estelle*, and *Mitchell* require a penalty-phase no-adverse-inference instruction would be on direct review, not in a habeas case governed by §2254(d). Pp. 9–12.

685 F. 3d 574, reversed and remanded.

SCALIA, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, ALITO, and KAGAN, JJ., joined. BREYER, J., filed a dissenting opinion, in which GINSBURG and SOTOMAYOR, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———

No. 12–794

———

## RANDY WHITE, WARDEN, PETITIONER *v.* ROBERT KEITH WOODALL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[April 23, 2014]

JUSTICE SCALIA delivered the opinion of the Court.

Respondent brutally raped, slashed with a box cutter, and drowned a 16-year-old high-school student. After pleading guilty to murder, rape, and kidnaping, he was sentenced to death. The Kentucky Supreme Court affirmed the sentence, and we denied certiorari. Ten years later, the Court of Appeals for the Sixth Circuit granted respondent's petition for a writ of habeas corpus on his Fifth Amendment claim. In so doing, it disregarded the limitations of 28 U. S. C. §2254(d)—a provision of law that some federal judges find too confining, but that all federal judges must obey. We reverse.

I

On the evening of January 25, 1997, Sarah Hansen drove to a convenience store to rent a movie. When she failed to return home several hours later, her family called the police. Officers eventually found the vehicle Hansen had been driving a short distance from the convenience store. They followed a 400- to 500-foot trail of blood from the van to a nearby lake, where Hansen's unclothed, dead body was found floating in the water. Hansen's "throat

had been slashed twice with each cut approximately 3.5 to 4 inches long," and "[h]er windpipe was totally severed." *Woodall* v. *Commonwealth*, 63 S. W. 3d 104, 114 (Ky. 2002).

Authorities questioned respondent when they learned that he had been in the convenience store on the night of the murder. Respondent gave conflicting statements regarding his whereabouts that evening. Further investigation revealed that respondent's "fingerprints were on the van the victim was driving," "[b]lood was found on [respondent's] front door," "[b]lood on his clothing and sweatshirt was consistent with the blood of the victim," and "DNA on . . . vaginal swabs" taken from the victim "was consistent with" respondent's. *Ibid.*

Faced with overwhelming evidence of his guilt, respondent pleaded guilty to capital murder. He also pleaded guilty to capital kidnaping and first-degree rape, the statutory aggravating circumstance for the murder. See App. 78; Ky. Rev. Stat. Ann. §532.025(2)(a) (West Supp. 2012). At the ensuing penalty-phase trial, respondent called character witnesses but declined to testify himself. Defense counsel asked the trial judge to instruct the jury that "[a] defendant is not compelled to testify and the fact that the defendant did not testify should not prejudice him in any way." App. 31. The trial judge denied the request, and the Kentucky Supreme Court affirmed that denial. *Woodall* v. *Commonwealth*, *supra,* at 115. While recognizing that the Fifth Amendment requires a no-adverse-inference instruction to protect a nontestifying defendant at the guilt phase, see *Carter* v. *Kentucky*, 450 U. S. 288 (1981), the court held that *Carter* and our subsequent cases did not require such an instruction here. *Woodall* v. *Commonwealth, supra,* at 115. We denied respondent's petition for a writ of certiorari from that direct appeal. *Woodall* v. *Kentucky*, 537 U. S. 835 (2002).

In 2006, respondent filed this petition for habeas corpus

in Federal District Court. The District Court granted relief, holding, as relevant here, that the trial court's refusal to issue a no-adverse-inference instruction at the penalty phase violated respondent's Fifth Amendment privilege against self-incrimination. *Woodall* v. *Simpson*, No. 5:06CV–P216–R (WD Ky., Feb. 24, 2009), App. to Pet. for Cert. 58a–61a*,* 2009 WL 464939, \*12. The Court of Appeals affirmed and ordered Kentucky to either resentence respondent within 180 days or release him. *Woodall* v. *Simpson,* 685 F. 3d 574, 581 (CA6 2012).[1] Judge Cook dissented.

We granted certiorari. 570 U. S. ___ (2013).

## II

### A

Section 2254(d) of Title 28 provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." "This standard," we recently reminded the Sixth Circuit, "is 'difficult to meet.'" *Metrish* v. *Lancaster*, 569 U. S. ___, ___ (2013) (slip op., at 4–5). "'[C]learly established Federal law'" for purposes of §2254(d)(1) includes only "'the holdings, as opposed to the dicta, of this Court's decisions.'" *Howes* v. *Fields*, 565 U. S. ___, ___ (2012) (slip op., at 4) (quoting *Williams* v. *Taylor*, 529 U. S. 362, 412 (2000)). And an "unreasonable application of" those holdings must be "'objectively unrea-

──────────

[1] The Court of Appeals did not reach the alternative ground for the District Court's decision: respondent's claim based on *Batson* v. *Kentucky*, 476 U. S. 79 (1986). See 685 F. 3d, at 577–578. That claim is not before us here.

sonable,'" not merely wrong; even "clear error" will not suffice. *Lockyer* v. *Andrade*, 538 U. S. 63, 75–76 (2003). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington* v. *Richter*, 562 U. S. ___, ___ (2011) (slip op., at 13).

Both the Kentucky Supreme Court and the Court of Appeals identified as the relevant precedents in this area our decisions in *Carter*, *Estelle* v. *Smith*, 451 U. S. 454 (1981), and *Mitchell* v. *United States*, 526 U. S. 314 (1999). *Carter* held that a no-adverse-inference instruction is required at the *guilt* phase. 450 U. S., at 294–295, 300. *Estelle* concerned the introduction at the penalty phase of the results of an involuntary, un-Mirandized pretrial psychiatric examination. 451 U. S., at 456–457, and n. 1; *id*., at 461. And *Mitchell* disapproved a trial judge's drawing of an adverse inference from the defendant's silence at sentencing "with regard to factual determinations respecting the circumstances and details of the crime." 526 U. S., at 327–330.

It is clear that the Kentucky Supreme Court's conclusion is not "contrary to" the actual holding of any of these cases. 28 U. S. C. §2254(d)(1). The Court of Appeals held, however, that the "Kentucky Supreme Court's denial of this constitutional claim was an unreasonable application of" those cases. 685 F. 3d, at 579. In its view, "reading *Carter*, *Estelle*, and *Mitchell* together, the only reasonable conclusion is that" a no-adverse-inference instruction was required at the penalty phase. *Ibid.*[2]

---

[2] The Court of Appeals also based its conclusion that respondent "was entitled to receive a no adverse inference instruction" on one of its own cases, *Finney* v. *Rothgerber*, 751 F. 2d 858, 863–864 (CA6 1985). 685

We need not decide here, and express no view on, whether the conclusion that a no-adverse-inference instruction was required would be correct in a case not reviewed through the lens of §2254(d)(1). For we are satisfied that the issue was, at a minimum, not "beyond any possibility for fairminded disagreement." *Harrington, supra,* at ___ (slip op., at 13).

We have, it is true, held that the privilege against self-incrimination applies to the penalty phase. See *Estelle, supra,* at 463; *Mitchell, supra,* at 328–329. But it is not uncommon for a constitutional rule to apply somewhat differently at the penalty phase than it does at the guilt phase. See, *e.g., Bobby* v. *Mitts*, 563 U. S. ___, ___ (2011) (*per curiam*) (slip op., at 4). We have "never directly held that *Carter* applies at a sentencing phase where the Fifth Amendment interests of the defendant are different." *United States* v. *Whitten*, 623 F. 3d 125, 131–132, n. 4 (CA2 2010) (Livingston, J., dissenting from denial of rehearing en banc).

Indeed, *Mitchell* itself leaves open the possibility that some inferences might permissibly be drawn from a defendant's penalty-phase silence. In that case, the District Judge had actually *drawn* from the defendant's silence an adverse inference about the drug quantity attributable to the defendant. See 526 U. S*.,* at 317–319. We held that this ran afoul of the defendant's "right to remain silent at sentencing." *Id.,* at 325, 327–328 (citing *Griffin* v. *California*, 380 U. S. 609, 614 (1965)). But we framed our holding narrowly, in terms implying that it was limited to inferences pertaining to the facts of the crime: "We decline to adopt an exception for the sentencing phase of a crimi-

_____

F. 3d, at 579 (internal quotation marks omitted). That was improper. As we cautioned the Sixth Circuit two Terms ago, a lower court may not "consul[t] its own precedents, rather than those of this Court, in assessing" a habeas claim governed by §2254. *Parker* v. *Matthews*, 567 U. S. ___, ___ (2012) (*per curiam*) (slip op., at 12).

nal case *with regard to factual determinations respecting the circumstances and details of the crime."* *Mitchell,* 526 U. S*.,* at 328 (emphasis added). "The Government retains," we said, *"the burden of proving facts relevant to the crime* . . . and cannot enlist the defendant in this process at the expense of the self-incrimination privilege." *Id.,* at 330 (emphasis added). And *Mitchell* included an express reservation of direct relevance here: "Whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in §3E1.1 of the United States Sentencing Guidelines (1998), is a separate question. It is not before us, and we express no view on it." *Ibid.*[3]

—————

[3] The Courts of Appeals have recognized that *Mitchell* left this unresolved; their diverging approaches to the question illustrate the possibility of fairminded disagreement. Compare *United States* v. *Caro*, 597 F. 3d 608, 629–630 (CA4 2010) (direct appeal) (noting that *Mitchell* "reserved the question of whether silence bears upon lack of remorse," but reasoning that "*Estelle* and *Mitchell* together suggest that the Fifth Amendment may well prohibit considering a defendant's silence regarding the nonstatutory aggravating factor of lack of remorse"), with *Burr* v. *Pollard*, 546 F. 3d 828, 832 (CA7 2008) (habeas) (while the right to remain silent persists at sentencing, "silence can be consistent not only with exercising one's constitutional right, but also with a lack of remorse," which "is properly considered at sentencing" (citing *Mitchell*, 526 U. S., at 326–327)); *Lee* v. *Crouse*, 451 F. 3d 598, 605, n. 3 (CA10 2006) (habeas) ("[T]he circuit courts have readily confined *Mitchell* to its stated holding, and have allowed sentencing courts to rely on, or draw inferences from, a defendant's exercise of his Fifth Amendment rights for purposes other than determining the facts of the offense of conviction").

Indeed, the Sixth Circuit itself has previously recognized that *Mitchell* "explicitly limited its holding regarding inferences drawn from a defendant's silence to facts about the substantive offense and did not address other inferences that may be drawn from a defendant's silence." *United States* v. *Kennedy*, 499 F. 3d 547, 552 (2007) (direct appeal). *Kennedy* upheld under *Mitchell* a sentencing judge's consideration of the defendant's refusal to complete a court-ordered psychosexual examination. 499 F. 3d*,* at 551–552.

*Mitchell*'s reservation is relevant here for two reasons. First, if *Mitchell* suggests that *some* actual inferences might be permissible at the penalty phase, it certainly cannot be read to require a *blanket* no-adverse-inference instruction at every penalty-phase trial. And it was a blanket instruction that was requested and denied in this case; respondent's requested instruction would have informed the jury that "[a] defendant is not compelled to testify and the fact that the defendant did not testify should not prejudice him *in any way*." App. 31 (emphasis added). Counsel for respondent conceded at oral argument that remorse was at issue during the penalty-phase trial, see Tr. of Oral Arg. 39; see also Brief for Respondent 18, yet the proposed instruction would have precluded the jury from considering respondent's silence as indicative of his lack of remorse. Indeed, the trial judge declined to give the no-adverse-inference instruction precisely because he was "aware of no case law that precludes the jury from considering the defendant's lack of expression of remorse . . . in sentencing." App. 36. This alone suffices to establish that the Kentucky Supreme Court's conclusion was not "objectively unreasonable." *Andrade,* 538 U. S*.,* at 76.

Second, regardless of the scope of respondent's proposed instruction, any inferences that could have been drawn from respondent's silence would arguably fall within the class of inferences as to which *Mitchell* leaves the door open. Respondent pleaded guilty to all of the charges he faced, including the applicable aggravating circumstances. Thus, Kentucky could not have shifted to respondent its "burden of proving facts relevant to the crime," 526 U. S., at 330: Respondent's own admissions had already established every relevant fact on which Kentucky bore the burden of proof. There are reasonable arguments that the logic of *Mitchell* does not apply to such cases. See, *e.g., United States* v. *Ronquillo*, 508 F. 3d 744, 749 (CA5 2007) ("*Mitchell* is inapplicable to the sentencing decision in this

case because 'the facts of the offense' were based entirely on Ronquillo's admissions, not on any adverse inference . . . . Ronquillo, unlike the defendant in *Mitchell*, admitted all the predicate facts of his offenses").

The dissent insists that *Mitchell* is irrelevant because it merely declined to create an exception to the "normal rule," supposedly established by *Estelle*, "that a defendant is entitled to a requested no-adverse-inference instruction" at sentencing. *Post,* at 5 (opinion of BREYER, J.). That argument disregards perfectly reasonable interpretations of *Estelle* and *Mitchell* and hence contravenes §2254(d)'s deferential standard of review. *Estelle* did not involve an adverse inference based on the defendant's silence or a corresponding jury instruction. See 451 U. S., at 461–469. Thus, whatever *Estelle* said about the Fifth Amendment, its holding[4]—the only aspect of the decision relevant here—does not "requir[e]" the categorical rule the dissent ascribes to it. *Carey* v. *Musladin*, 549 U. S. 70, 76 (2006). Likewise, fairminded jurists could conclude that *Mitchell*'s reservation regarding remorse and acceptance of responsibility would have served no meaningful purpose if *Estelle* had created an across-the-board rule against adverse

——————

[4] The dissent says *Estelle* "held that 'so far as the protection of the Fifth Amendment is concerned,' it could 'discern no basis to distinguish between the guilt and penalty phases of a defendant's 'capital murder trial.'" *Post,* at 2 (quoting *Estelle*, 451 U. S., at 462–463). Of course, it did not "hold" that. Rather, it held that the defendant's Fifth Amendment "rights were abridged by the State's introduction of" a pretrial psychiatric evaluation that was administered without the preliminary warning required by *Miranda* v. *Arizona*, 384 U. S. 436 (1966). 451 U. S., at 473. In any event, even *Estelle*'s dictum did not assume an entitlement to a blanket no-adverse-inference instruction. The quoted language is reasonably read as referring to the *availability* of the Fifth Amendment privilege at sentencing rather than the precise *scope* of that privilege when applied in the sentencing context. Indeed, it appears in a passage responding to the State's argument that the defendant "was not entitled to the protection of the Fifth Amendment" in the first place. *Id.,* at 462.

inferences; we are, after all, hardly in the habit of reserving "separate question[s]," *Mitchell*, *supra,* at 330, that have already been definitively answered. In these circumstances, where the "'precise contours'" of the right remain "'unclear,'" state courts enjoy "broad discretion" in their adjudication of a prisoner's claims. *Lockyer*, 538 U. S., at 76 (quoting *Harmelin* v. *Michigan*, 501 U. S. 957, 998 (1991) (KENNEDY, J., concurring in part and in judgment)).

## B

In arguing for a contrary result, respondent leans heavily on the notion that a state-court "'determination may be set aside . . . if, under clearly established federal law, the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled.'" Brief for Respondent 21 (quoting *Ramdass* v. *Angelone*, 530 U. S. 156, 166 (2000) (plurality opinion)). The Court of Appeals and District Court relied on the same proposition in sustaining respondent's Fifth Amendment claim. See 685 F. 3d, at 579; App. to Pet. for Cert. 37a–39a, 2009 WL 464939, *4.

The unreasonable-refusal-to-extend concept originated in a Fourth Circuit opinion we discussed at length in *Williams*, our first in-depth analysis of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). See 529 U. S., at 407–409 (citing *Green* v. *French*, 143 F. 3d 865, 869–870 (1998)). We described the Fourth Circuit's interpretation of §2254(d)(1)'s "unreasonable application" clause as "generally correct," 529 U. S., at 407, and approved its conclusion that "a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case," *id.,* at 407–408 (citing *Green*, *supra*, at 869–870). But we took no position on the Fourth Circuit's further conclusion that a state court commits

AEDPA error if it "unreasonably refuse[s] to extend a legal principle to a new context where it should apply." 529 U. S., at 408–409 (citing *Green, supra*, at 869–870). We chose not "to decide how such 'extension of legal principle' cases should be treated under §2254(d)(1)" because the Fourth Circuit's proposed rule for resolving them presented several "problems of precision." 529 U. S., at 408–409.

Two months later, a plurality paraphrased and applied the unreasonable-refusal-to-extend concept in *Ramdass*. See 530 U. S., at 166–170. It did not, however, grant the habeas petitioner relief on that basis, finding that there was no unreasonable refusal to extend. Moreover, Justice O'Connor, whose vote was necessary to form a majority, cited *Williams* and made no mention of the unreasonable-refusal-to-extend concept in her separate opinion concurring in the judgment. See 530 U. S., at 178–181. *Ramdass* therefore did not alter the interpretation of §2254(d)(1) set forth in *Williams*. Aside from one opinion *criticizing* the unreasonable-refusal-to-extend doctrine, see *Yarborough* v. *Alvarado*, 541 U. S. 652, 666 (2004), we have not revisited the issue since *Williams* and *Ramdass*. During that same 14-year stretch, however, we have repeatedly restated our "hold[ing]" in *Williams*, *supra*, at 409, that a state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case, see, *e.g., Cullen* v. *Pinholster*, 563 U. S. ___, ___ (2011) (slip op., at 10); *Rompilla* v. *Beard*, 545 U. S. 374, 380 (2005); *Yarborough, supra,* at 663; *Penry* v. *Johnson*, 532 U. S. 782, 792 (2001).

Thus, this Court has never adopted the unreasonable-refusal-to-extend rule on which respondent relies. It has not been so much as endorsed in a majority opinion, let alone relied on as a basis for granting habeas relief. To the extent the unreasonable-refusal-to-extend rule differs

from the one embraced in *Williams* and reiterated many times since, we reject it. Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error. See Scheidegger, Habeas Corpus, Relitigation, and the Legislative Power, 98 Colum. L. Rev. 888, 949 (1998). Thus, "if a habeas court must extend a rationale before it can apply to the facts at hand," then by definition the rationale was not "clearly established at the time of the state-court decision." *Yarborough*, 541 U. S., at 666. AEDPA's carefully constructed framework "would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law." *Ibid.*

This is not to say that §2254(d)(1) requires an "'identical factual pattern before a legal rule must be applied.'" *Panetti* v. *Quarterman*, 551 U. S. 930, 953 (2007). To the contrary, state courts must reasonably apply the rules "squarely established" by this Court's holdings to the facts of each case. *Knowles* v. *Mirzayance*, 556 U. S. 111, 122 (2009). "[T]he difference between applying a rule and extending it is not always clear," but "[c]ertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." *Yarborough*, *supra*, at 666. The critical point is that relief is available under §2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no "fairminded disagreement" on the question, *Harrington*, 562 U. S., at \_\_\_ (slip op., at 13).

Perhaps the logical next step from *Carter*, *Estelle*, and *Mitchell* would be to hold that the Fifth Amendment requires a penalty-phase no-adverse-inference instruction in a case like this one; perhaps not. Either way, we have not yet taken that step, and there are reasonable arguments

on both sides—which is all Kentucky needs to prevail in this AEDPA case. The appropriate time to consider the question as a matter of first impression would be on direct review, not in a habeas case governed by §2254(d)(1).

*     *     *

Because the Kentucky Supreme Court's rejection of respondent's Fifth Amendment claim was not objectively unreasonable, the Sixth Circuit erred in granting the writ. We therefore need not reach its further holding that the trial court's putative error was not harmless. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 12–794

———————

## RANDY WHITE, WARDEN, PETITIONER *v.* ROBERT KEITH WOODALL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[April 23, 2014]

JUSTICE BREYER, with whom JUSTICE GINSBURG and JUSTICE SOTOMAYOR join, dissenting.

During the penalty phase of his capital murder trial, respondent Robert Woodall asked the court to instruct the jury not to draw any adverse inferences from his failure to testify. The court refused, and the Kentucky Supreme Court agreed that no instruction was warranted. The question before us is whether the Kentucky courts unreasonably applied clearly established Supreme Court law in concluding that the Fifth Amendment did not entitle Woodall to a no-adverse-inference instruction. See 28 U. S. C. §2254(d)(1). In my view, the answer is yes.

I

This Court's decisions in *Carter* v. *Kentucky*, 450 U. S. 288 (1981), and *Estelle* v. *Smith*, 451 U. S. 454 (1981), clearly establish that a criminal defendant is entitled to a requested no-adverse-inference instruction in the penalty phase of a capital trial. First consider *Carter*. The Court held that a trial judge "has the constitutional obligation, upon proper request," to give a requested no-adverse-inference instruction in order "to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify." 450 U. S., at 305. This is because when "the jury is left to roam at large with only its untutored

instincts to guide it," it may "draw from the defendant's silence broad inferences of guilt." *Id.,* at 301. A trial court's refusal to give a requested no-adverse-inference instruction thus "exacts an impermissible toll on the full and free exercise of the [Fifth Amendment] privilege." *Id.,* at 305.

Now consider *Estelle.* The Court held that "so far as the protection of the Fifth Amendment privilege is concerned," it could "discern no basis to distinguish between the guilt and penalty phases" of a defendant's "capital murder trial." 451 U. S., at 462–463. The State had introduced at the penalty phase the defendant's compelled statements to a psychiatrist, in order to show the defendant's future dangerousness. Defending the admission of those statements, the State argued that the defendant "was not entitled to the protection of the Fifth Amendment because [his statements were] used only to determine punishment after conviction, not to establish guilt." *Id.,* at 462. This Court rejected the State's argument on the ground that the Fifth Amendment applies equally to the penalty phase and the guilt phase of a capital trial. *Id.,* at 462–463.

What is unclear about the resulting law? If the Court holds in Case A that the First Amendment prohibits Congress from discriminating based on viewpoint, and then holds in Case B that the Fourteenth Amendment incorporates the First Amendment as to the States, then it is clear that the First Amendment prohibits the States from discriminating based on viewpoint. By the same logic, because the Court held in *Carter* that the Fifth Amendment requires a trial judge to give a requested no-adverse-inference instruction during the guilt phase of a trial, and held in *Estelle* that there is no basis for distinguishing between the guilt and punishment phases of a capital trial for purposes of the Fifth Amendment, it is clear that the Fifth Amendment requires a judge to provide a requested no-adverse-inference instruction during the penalty phase

of a capital trial.

II

The Court avoids this logic by reading *Estelle* too narrowly. First, it contends that *Estelle*'s holding that the Fifth Amendment applies equally to the guilt and penalty phases was mere dictum. *Ante,* at 8, and n. 4. But this rule was essential to the resolution of the case, so it is binding precedent, not dictum.

Second, apparently in the alternative, the majority acknowledges that *Estelle* "held that the privilege against self-incrimination *applies* to the penalty phase," but it concludes that *Estelle* said nothing about the *content* of the privilege in the penalty phase. *Ante,* at 5 (emphasis added). This interpretation of *Estelle* ignores its rationale. The reason that *Estelle* concluded that the Fifth Amendment applies to the penalty phase of a capital trial is that the Court saw "no basis to distinguish between the guilt and penalty phases of [a defendant's] capital murder trial so far as the protection of the Fifth Amendment privilege is concerned." 451 U. S., at 462–463. And as there is no basis to distinguish between the two contexts for Fifth Amendment purposes, there is no basis for varying either the application or the content of the Fifth Amendment privilege in the two contexts.

The majority also reads our decision in *Mitchell* v. *United States*, 526 U. S. 314 (1999), to change the legal landscape where it expressly declined to do so. In *Mitchell*, the Court considered whether to create an exception to the "normal rule in a criminal case . . . that no negative inference from the defendant's failure to testify is permitted." *Id.,* at 328. We refused: "We decline to adopt an exception for the sentencing phase of a criminal case with regard to factual determinations respecting the circumstances and details of the crime." *Ibid. Mitchell* thus reiterated what *Carter* and *Estelle* had already established. The "normal

rule" is that Fifth Amendment protections apply during trial and sentencing. Because the Court refused "to adopt an *exception*" to this default rule, *ibid.* (emphasis added), the law before and after *Mitchell* remained the same.

The majority seizes upon the limited nature of *Mitchell*'s holding, concluding that by refusing to adopt an exception to the normal rule for *certain* "factual determinations," *Mitchell* suggested that inferences about *other* matters might be permissible at the penalty phase. *Ante,* at 5–7. The majority seems to believe that *Mitchell* somehow casts doubt upon whether *Estelle*'s Fifth Amendment rule applies to matters unrelated to the "circumstances and details of the crime," such as remorse, or as to which the State does not bear the burden of proof.

As an initial matter, *Mitchell* would have had to overrule—or at least substantially limit—*Estelle* to create an exception for matters unrelated to the circumstances and details of the crime or for matters on which the defendant bears the burden of proof. Sentencing proceedings, particularly capital sentencing proceedings, often focus on factual matters that do not directly concern facts of the crime. Was the defendant subject to flagrant abuse in his growing-up years? Is he suffering from a severe physical or mental impairment? Was he supportive of his family? Is he remorseful? *Estelle* itself involved compelled statements introduced to establish the defendant's future dangerousness—another fact often unrelated to the circumstances or details of a defendant's crime. 451 U. S., at 456. In addition, States typically place the burden to prove mitigating factors at the penalty phase on the defendant. A reasonable jurist would not believe that *Mitchell*, by refusing to create an exception to *Estelle*, intended to undermine the very case it reaffirmed.

*Mitchell* held, simply and only, that the normal rule of *Estelle* applied in the circumstances of the particular case before the Court. That holding does not destabilize settled

law beyond its reach.  We frequently resist reaching beyond the facts of a case before us, and we often say so.  That does not mean that we throw cases involving all other factual circumstances into a shadow-land of legal doubt.

The majority also places undue weight on dictum in *Mitchell* reserving judgment as to whether to create additional exceptions to the normal rule of *Estelle* and *Carter*.  We noted: "Whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in §3E1.1 of the United States Sentencing Guidelines (1998), is a separate question.  It is not before us, and we express no view on it."  526 U. S., at 330.  This dictum, says the majority, suggests that some inferences, including about remorse (which was at issue in Woodall's case), may be permissible.  *Ante*, at 5–7.

When the Court merely reserves a question that is "not before us" for a future case, we do not cast doubt on legal principles that are already clearly established.  The Court often identifies questions that it is *not* answering in order to clarify the question it *is* answering.  In so doing—that is, in "express[ing] no view" on questions that are not squarely before us—we do not create a state of uncertainty as to those questions.  And in respect to *Mitchell*, where the Court reserved the question whether to create an exception to the normal rule, this is doubly true.  The normal rule that a defendant is entitled to a requested no-adverse-inference instruction at the penalty phase as well as the guilt phase remained clearly established after *Mitchell*.

## III

In holding that the Kentucky courts did not unreasonably apply clearly established law, the majority declares that if a court must "extend" the rationale of a case in

order to apply it, the rationale is not clearly established. *Ante,* at 9–11. I read this to mean simply that if there may be "fairminded disagreement" about whether a rationale applies to a certain set of facts, a state court will not unreasonably apply the law by failing to apply that rationale, and I agree. See *Harrington* v. *Richter*, 562 U. S. ___ (2011). I do not understand the majority to suggest that reading two legal principles together would necessarily "extend" the law, which would be a proposition entirely inconsistent with our case law. As long as fairminded jurists would conclude that two (or more) legal rules considered together would dictate a particular outcome, a state court unreasonably applies the law when it holds otherwise. *Ibid.*

That is the error the Kentucky Supreme Court committed here. Failing to consider together the legal principles established by *Carter* and *Estelle*, the state court confined those cases to their facts. It held that *Carter* did not apply because Woodall had already pleaded guilty—that is, because Woodall requested a no-adverse-inference instruction at the penalty phase rather than the guilt phase of his trial. *Woodall* v. *Commonwealth*, 63 S. W. 3d 104, 115 (Ky. 2001). And it concluded that *Estelle* did not apply because *Estelle* was not a "jury instruction case." 63 S. W. 3d, at 115. The Kentucky Supreme Court unreasonably failed to recognize that together *Carter* and *Estelle* compel a requested no-adverse-inference instruction at the penalty phase of a capital trial. And reading *Mitchell* to rein in the law in contemplation of never-before-recognized exceptions to this normal rule would be an unreasonable *retraction* of clearly established law, not a proper failure to "extend" it. Because the Sixth Circuit correctly applied clearly established law in granting Woodall's habeas petition, I would affirm.

With respect I dissent from the Court's contrary conclusion.